**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION**

| | |
|---|---|
| MICHE BAG, LLC, a Utah limited liability company,<br><br>    Plaintiff,<br><br>    v.<br><br>THE MARSHALL GROUP, INC., d/b/a SIERRA'S, an Indiana corporation,<br><br>    Defendant. | Civil Action No. 3:10-cv-00129-RLM-CAN<br>Honorable Judge Robert L. Miller<br><br>**JURY TRIAL DEMANDED** |

**BRIEF IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING
ORDER AND PRELIMINARY INJUNCTION BASED ON
TRADE DRESS INFRINGEMENT**

Miche Bag, LLC, ("Miche Bag") respectfully submits the following Brief in Support of its Motion for Temporary Restraining Order and Preliminary Injunction Based on Trade Dress Infringement ("Motion") against The Marshall Group, Inc., d/b/a Sierra's ("Sierra's").

**I.  INTRODUCTION**

Miche Bag seeks injunctive and monetary relief from Sierra's infringement of Miche Bag's intellectual property rights. Miche Bag has successfully marketed a distinctive assortment of handbags. In an attempt to capitalize on Miche Bag's success, Sierra's sells blatant copies of Miche Bag's handbags. Sierra's products infringe Miche Bag's trade dress and endanger the goodwill that Miche Bag has developed in its trade dress. Unless this Court immediately enjoins all sales of Sierra's handbag products, Miche Bag will be irreparably harmed.

As set forth below, Miche Bag meets the requirements for temporary and preliminary injunctive relief.  Miche Bag, therefore, respectfully requests that the Court order an immediate hearing and issue a temporary restraining order and a preliminary injunction.

## II.   FACTUAL BACKGROUND

Miche Bag sells a line of designer handbags that enable the user to change the look of the hand bag by simply changing the outer cover.  (Affidavit of Corbin Church, attached hereto as Exhibit A ["Church Aff."], ¶¶ 5 & 7.)  Miche Bag is a pioneer in the sale of bundled purse products and has acquired extensive intellectual property rights, including multiple patents, trademarks, copyrights, and trade dress rights, in its unique handbag products and bundles.  (*Id*., ¶¶ 6 & 8.)  This includes the trade dress of the Miche Bag handbags, consisting of a combination of features, including, but not limited to, purses and handbags with shapes, sizes, and features in distinctive configurations that are unique to Miche Bag handbags.

Miche Bag's handbags includes a small handbag and a large handbag, each with its own unique trade dress.  Miche Bag's trade dress of its small handbag includes, at least in part:

(1)   **Unique slightly-curved upper aspect of the bag;**

(2)   **Unique curved straps;**

(3)   **Chrome, oval buckles;**

(4)   **Rigid, polygonal-shaped body;**

(5)   **Inset sides;**

(6)   **Trapezoidal-shaped zipper ends;**

(7)   **Removable decorative covers for the handbags, that enable a consumer to utilize the same purse or handbag with different removable decorative covers, which are available in both full-wrap and side-wrap variations; and**

(8)   **Two-tone appearance.**



(*Id.*, ¶ 10.)  Miche Bag's trade dress in its large handbag includes, at least in part:

**(1)**     **Unique flexible straps;**

**(2)**     **Chrome, round buckles;**

**(3)**     **Removable decorative covers for the handbags, that enable a consumer to utilize the same purse or handbag with different removable decorative covers with fold–over flaps; and**

**(4)**     **Two-tone appearance.**



(*Id., ¶* 11.)  Additionally, both the Miche Bag small and large handbags are offered in black and brown colors.  (*Id.*, ¶ 13.)  Miche Bag's trade dress rights in the small and large handbags, their covers and color offerings, and the Miche Bag product line of handbags are collectively referred to herein as the Miche Trade Dress.

Presently, Miche Bag markets its handbags through various means, including, but not limited to, a worldwide network of authorized Miche Bag distributors, representatives, and retailers.  (*Id.*, ¶ 20.)  A primary source of sales of Miche Bag handbags is through home parties hosted by a Miche Bag approved representative.  (*Id.*, ¶ 21.)  This sales structure allows Miche Bag to control the reputation of its brand by authorizing distributors, home-party representatives, and retailers to sell its products in a certain manner.  (*Id.*, ¶ 22.)  Miche Bag handbag customers become so enamored with Miche Bag's unique handbags that they accept invitations to be part of Miche Bag's marketing network as a home-party representative.  Miche Bag's worldwide distribution network also grows through interest in Miche Bag's unique handbags such that persons and/or businesses contact Miche Bag and request to become part of Miche Bag's worldwide marketing network.  (*Id.*, ¶¶ 23–24.)  Thus, Miche Bag expands its business through direct sales and through customers becoming part of the Miche Bag worldwide network of distributors, representatives, and retailers of Miche Bag products.  (*Id.*, ¶ 23.)

While attending a trade show, a Miche Bag employee encountered knockoff Miche Bag handbags with detachable covers sold by Sierra's under the name "Seasons by Sierra's." (*Id.*, ¶¶ 25–27.) Miche Bag sent a cease-and-desist letter to Sierra's on December 15, 2009. (Affidavit of James B. Belshe, attached hereto as Exhibit B ["Belshe Aff."], ¶¶ 3.) Sierra's responded with a letter on December 21, 2009, wherein Sierra's refused to cease infringing Miche Bag's protected intellectual property rights including the Miche Trade Dress. (*Id.*, ¶ 4.) Moreover, Sierra's stated that it wanted to be a competitor with Miche Bag. (*Id.*)

Sierra's continues to offer infringing products for sale as of the present date, including on its current website, www.sierrasfootwear.com and through its catalogue. (Belshe Aff., ¶ 5.) Recently these Sierra's products became available for purchase by consumers through at least one individual retailer. (*Id.*) Miche Bag has purchased and is in possession of Sierra's infringing handbags. (Belshe Aff., ¶ 6.) Sierra's infringing handbags are sold in direct competition with Miche Bag's protected handbags and are sold at a lower price point. (Church Aff., ¶¶ 28–29.) Sierra's lower prices erodes interest in Miche Bag's products, which in turn harms Miche Bag's worldwide network of distributors, representatives, and retailers that is established through interest in and enthusiasm for Miche Bag's unique handbags. (*Id.*, ¶¶ 32–32.)

After being unsuccessful in its attempt to informally resolve this matter, Miche Bag filed an amended complaint for patent, trade dress, and copyright infringement on May 7, 2010. In addition to the protectable Miche Trade Dress, Miche Bag handbags and removable covers are also protected by design and utility patents and by copyrights. Sierra's handbags are such flagrant copies of the Miche Trade Dress that Sierra's handbags also infringe Miche Bag's design and utility patents. Moreover, at least two of Sierra's removable covers infringe Miche Bag's copyrights.

4

### III.    APPLICABLE LEGAL STANDARD

"A temporary restraining order (TRO) is an emergency remedy issued to maintain the status quo until a hearing can be held on an application for a preliminary injunction.  The purpose of a TRO, similar to that of a preliminary injunction, is to minimize the hardship to the parties pending the ultimate resolution of the suit."  *Crue v. Aiken*, 137 F.Supp.2d 1076, 1082 (7th Cir. 2001) (internal citations omitted).  "In [the Seventh Circuit], the standards for a TRO and a preliminary injunction are functionally identical."  *Id*. at 1082–1083.

The test set forth by the Seventh Circuit on whether to issue a temporary restraining order or a preliminary injunction includes showing: "(1) that the movant has some likelihood of success on the merits of the underlying litigation; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted."  *Id*.  If the movant satisfies the three factors above, "then the Court must balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently and consider the interest of the public in whether the injunction is to be granted or denied."  *Id*.  As demonstrated below, Miche Bag is entitled to the requested injunctive relief.

### IV.    ARGUMENT

#### A.    Miche Bag is Likely to Prevail on the Merits of its Trade Dress Infringement Claims.

Miche Bag is likely to succeed in demonstrating infringement of the Miche Trade Dress by Sierra's.  Miche Bag developed and markets a distinctive line of handbags sold throughout the United States.  Sierra's now sells products nearly identical to the distinctive Miche Bag handbags and, therefore, misleads consumers to believe that Sierra's handbags are associated with Miche Bag.  Thus, Sierra's infringes Miche Bag's trade dress rights and should be enjoined from future sales of handbags that can be confused with Miche Bag handbags.

5

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects from infringement the unregistered trade dress of a product. *See Bretford Mfg., Inc. v. Smith Sys. Mfg. Corp.*, 419 F.3d 576, 578–79 (7th Cir. 2005). Trade dress "is essentially [the] total image and overall appearance" of a product, and "may include features such as size, shape, color or color combinations, texture, graphics, or even particular sales techniques." *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 764 n.1 (1992). To demonstrate infringement of trade dress under Section 43(a) of the Lanham Act, a plaintiff must show that: (1) its trade dress is protectable because it is either inherently distinctive or has acquired secondary meaning and (2) the similarity of the defendant's trade dress causes a likelihood of confusion on the part of consumers as to the source or affiliation of the products. *See Thomas & Betts Corp. v. Panduit Corp.*, 138 F.3d 277, 291 (7th Cir. 1998), *overruled on other grounds by TrafFix Devices , Inc. v. Mktg. Displays, Inc.*, 532 U.S. 23 (2001). Additionally, the plaintiff must show that the trade dress is not functional. *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 209 (2000).

Importantly, Miche Bag must only prove that it has "some likelihood of success on the merits of the underlying litigation." *Crue*, 137 F.Supp.2d at 1082. Miche Bag need not conclusively show that it will prevail at trial, as "all findings of fact and conclusions of law at the preliminary injunction stage are subject to change upon the ultimate trial on the merits." *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1363 (Fed. Cir. 2001).

### 1. The Miche Bag Trade Dress has Acquired Secondary Meaning and is Distinctive.

Trade dress has secondary meaning if there exists "a mental association in buyers' minds between the alleged mark and a single source of the product." *Packman v. Chicago Tribune Corp.*, 267 F.3d 628, 641 (7th Cir. 2001) (internal citations omitted). The Seventh Circuit considers the following factors to determine whether a mark has acquired secondary meaning:

"(1) direct consumer testimony and consumer surveys; (2) exclusivity, length, and manner of use; (3) amount and manner of advertising; (4) amount of sales and number of customers; (5) established place in the market; and (6) proof of intentional copying."  *Echo Travel, Inc. v. Travel Assoc., Inc.*, 870 F.2d 1264, 1267 (7th Cir. 1989).

### a)      Direct consumer testimony is unavailable at this time.

While consumer surveys are probative of secondary meaning, "a plaintiff is not required to undertake them in order to succeed on a motion for preliminary injunction.  *National Presto Ind. v. Dazey Corp.*, 1990 U.S. Dist. LEXIS 17760, *18, 18 USPQ2d 1113 (N.D. Ill. Nov. 19, 1990).  Given the early stage of this litigation, direct consumer testimony and consumer surveys are not available.  Nevertheless, Miche Bag shows the secondary meaning of the Miche Trade Dress through the other relevant factors.  Thus, this factor is neutral.

### b)      Miche Bag has exclusively marketed handbags with the Miche Trade Dress long enough to acquire secondary meaning.

Miche Bag's handbags have been exclusively marketed and sold by Miche Bag since 2007.  This is ample time to acquire secondary meaning.  "Fashion items take readily to development of secondary meaning upon mass media promotion, for the fashion status of the source is often part of the commercial value of the fashion items."  *L.A. Gear Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 130 (Fed. Cir. 1993) (secondary meaning acquired after six months).

Miche Bag was the first company to introduce its unique handbags to consumers and has been using the Miche Trade Dress with handbags since 2007.  (Church Aff., ¶¶ 7 & 15.)  Miche Bag's handbags are marketed and purchased, *inter alia,* on Miche Bag's website, www.michebag.com, through a worldwide network of distributors, representatives, and retailers, and on television, including the Home Shopping Network.  (*Id*., ¶¶ 20–21.)  Additionally, Miche

Bag has committed extensive resources to protecting its intellectual property, including the Miche Trade Dress. (*Id*., ¶ 13.) Thus, this factor weighs in favor of secondary meaning.

### c) The Miche Trade Dress has been extensively advertised.

As stated above, Miche Bag expends considerable resources to market its handbags through a wide variety of marketing channels. Miche Bag handbags incorporating the Miche Trade Dress are marketed on the Internet through Miche Bag's website, in person through a worldwide network of authorized distributors, representatives, and retailers, and on television, including the Home Shopping Network. (Church Aff., ¶¶ 20–24.) Further, Miche Bag handbags have been advertised through several mass media news reports. (*Id*., ¶ 20.) Miche Bag's efforts to advertise its handbags, and mass media reports regarding Miche Bag handbags, "promote a conscious connection by the public between the trade dress and the product's source," which is evidence of secondary meaning. *See Yankee Candle Co v. Bridgewater Candle Co.*, 259 F.3d 25, 44 (1st Cir. 2001). This factor weighs in favor of a finding of secondary meaning.

### d) Miche Bag handbags with the Miche Trade Dress have enjoyed abundant sales to numerous customers.

A high volume of sales supports a finding of secondary meaning. *See Custom Vehicles, Inc. v. Forest River, Inc.*, 476 F.3d 481, 485–86 (7th Cir. 2007). Miche Bag's sales related to the Miche Trade Dress exceeded $27 million in 2009 and are expected to exceed $50 million in 2010. (Church Aff., ¶¶ 17–18.) Thus, Miche Bag has successfully sold handbags incorporating the Miche Trade Dress to a large number of consumers, who associate the Miche Trade Dress with a single source. This factor, therefore, weighs in favor of a finding of secondary meaning.

### e) Miche Bag handbags and the Miche Trade Dress are established in the marketplace.

As the first to introduce its unique handbags into the market, Miche Bag enjoys a nearly exclusive position in the market for the sale of handbags with removable covers. (Church Aff.,

¶¶ 6–8, 13–16.)  Thus, Miche Bag has established its dominant place in the marketplace of bundled purse products.  This factor weighs in favor of a finding of secondary meaning.

### f)      Sierra's intentionally copied the Miche Trade Dress.

Direct evidence is not necessary to show intentional copying as evidence of intent to copy in order to benefit from the reputation and goodwill of another may be shown by circumstantial evidence.  *See AmBRIT Inc. v. Kraft Inc.*, 805 F.2d 974, 986–87 (11th Cir. 1986) (finding of intent "especially fitting" when based upon circumstantial evidence of "substantial similarities").

As shown below, Sierra's handbags share substantial similarities with the Miche Trade Dress.  Moreover, Sierra's has copied Miche Bag's handbag covers that have received a registered copyright from the United States Copyright Office.[1]  Sierra's handbags share several features with the Miche Trade Dress, all of which were unlikely to be developed and combined into a single product without prior knowledge of the Miche Trade Dress.  Additionally, as shown below, Sierra's copied Miche Bag's three-step graphical explanation of its handbags.

  

Miche Bag's graphical product explanation. (Church Aff., Exhibit 2.)

Sierra's graphical product explanation. (Church Aff., Exhibit 1 at 1.)

Thus, based upon the substantial similarities between Sierra's handbags and the Miche Trade Dress, the Court should find that Sierra's intentionally copied the Miche Trade Dress with the purpose of deriving benefit from the goodwill and reputation associated with Miche Bag. This factor weighs in favor of a finding of secondary meaning.

---

[1] Miche Bag is the owner of Copyright Registration No. VA0001652763 and Copyright Registration No. VA0001685132.  Sierra's handbag covers that infringe these copyrights are pictured on pages 13 and 15.

Based upon the above, the Court should enjoin Sierra's from all sales of handbags that infringe the Miche Trade Dress.

### 2. Sierra's Handbags are Confusingly Similar.

Consumers will likely be confused as to the source of Sierra's handbags because Sierra's handbags copy the Miche Trade Dress, which indicates Miche Bag as the source in the minds of consumers. "In the trade dress context, the relevant inquiry is 'whether there is a likelihood of confusion resulting from the total image and impression created by the defendant's product or package on the eye and mind of an ordinary purchaser.'" *Brunswick Corp. v. Spirit Reel Co.*, 832 F.2d 513, 521 (10th Cir. 1987) (*citing* 1 McCarthy on Trademarks § 8:15). There is a likelihood of confusion "when consumers make an incorrect mental association between the involved commercial products or their producers." *Thompson v. Haynes*, 305 F.3d 1369, 1377 (Fed. Cir. 2002)

The Seventh Circuit stated in *AM General Corp. v. DaimlerChrysler Corp.* that "[l]ikelihood of confusion is measured by: (a) similarity of the trade dress; (b) the area and manner of concurrent use, including the similarity of the products on which the trade dresses are being used; (c) the degree and care likely to be used by consumers; (d) the strength of the plaintiff's trade dress; (e) evidence, if any, of actual confusion; and (f) any intent of the defendant to pass off its product as that of the plaintiff." 311 F.3d 796, 824–25 (7th Cir. 2002). Although there may be several factors in a finding a likelihood of confusion, "[n]o single factor is dispositive, and courts may assign varying weights to each of the factors depending on the facts presented . . . ." *Packman*, 267 F.3d at 643.

### a) Sierra's handbags are exceedingly similar in appearance.

Regarding the first *AM General* factor, "[t]he close similarity between the parties trade dresses in side-by-side comparison is also a factor to be considered in evaluating the likelihood of confusion." *Computer Care,* 982 F.2d at 1070. Sierra's products and the Miche Trade Dress

are identical in that Sierra's handbags copy numerous distinctive features of the Miche Trade Dress.  Further, the inclusion of the distinctive features of the Miche Trade Dress in Sierra's handbags makes the overall appearance of Sierra's handbags confusingly similar to the overall appearance of the Miche Trade Dress.

The overall appearance of Miche Bag handbags creates a distinctive visual impression. The table below contains pictures of Miche Bag's handbags in the left-hand column.  These pictures include and identify the features of Miche Bag's handbags that combine to create a unique appearance and that indicate that the handbags originate from a single source, namely Miche Bag.  The right-hand column of the table below contains pictures of Sierra's infringing handbags.  Sierra's handbags contain the same combination and arrangement of aesthetic features that combine to create the unique appearance of the Miche Bag handbags which identify Miche Bag as the source of the handbags.[2]



| MICHE BAG (Small Handbag) | SIERRA'S (Small Handbag) |
|---|---|
| Slightly Curved Upper Aspect | |
| | |
| Curved Straps | |
| | |

---

[2] The provided images are not a comprehensive recitation and description of every design feature that the Miche Bag handbags and Sierra's handbags share.  Additional common design features will be apparent upon visual inspection of the handbags.



| MICHE BAG (Small Handbag) | SIERRA'S (Small Handbag) |
|---|---|
| **Oval Buckles** | |
| **Rigid, Polygonal Body** | |
| **Inset Sides** | |
| **Trapezoidal-Shaped Zipper Ends** | |





| MICHE BAG (Large Handbag) | SIERRA'S (Large Handbag) |
|---|---|
| Two-Tone Appearance ||



In addition to these features, Sierra's handbags are nearly identical in size, shape, and overall appearance to Miche Bag's handbags. Similar to Miche Bag, Sierra's offers their handbags in brown and black variations. (Church Aff., Exhibit 1 at 2 & 6.) Also, the small Miche Bag handbag measures 5.75" x 11.75" x 6.5" and the large Miche Bag handbag measures 12" x 15" x 5". (*Id.*, ¶¶ 10–11.) Similarly, Sierra's claims that their small handbag measures 7" x 12" x 4" and its large handbag measures 11" x 14" x 5". (*Id.*, Exhibit 1 at 2 & 6.)

| MICHE BAG | SIERRA'S |
|---|---|
| Small Handbag Side-by-Side Size Comparison ||
| Large Handbags Side-by-Side Size Comparison ||



Thus, not only has Sierra's copied the Miche Trade Dress in order to confuse consumers, but Sierra's has tailored its line of handbags to mirror Miche Bag's. Specifically, Miche Bag sells two handbags, a small and a large handbag. Sierra's likewise sells confusingly similar small and large handbags, as shown above. Thus, this first factor weighs in favor of a finding of a likelihood of confusion.

> **b)** **Confusion is likely because Miche Bag handbags and Sierra's handbags are marketed through similar channels.**

With regard to the second *AM General* factor, visual similarities between the Miche Trade Dress, the Sierra's products, and the channels in which both are sold, can be evidence of confusion. *Computer Care*, 982 F.2d at 1070–1071. Both Miche Bag handbags and Sierra's handbags are offered over the Internet and through authorized retailers. (Church Aff., ¶ 20; Belshe Aff., ¶ 5.) Thus, this factor weighs in favor of a likelihood of confusion.

> **c)** **Consumers are likely to be confused because little care is likely to be exercised in purchasing handbags.**

Regarding the third *AM General* factor, "visual similarity may have greater importance when the products are low-priced items not likely to receive considerable study from the consumer." *AM General*, 311 F.3d at 828. The products sold by Miche Bag and Sierra's are relatively inexpensive. As such, consumers are unlikely to use a high degree of care in purchasing these products. Thus, the likelihood of confusion between the Miche Bag handbags and Sierra's infringing handbags is high. This factor, therefore, weighs in favor of a likelihood of confusion.

Even if consumers could distinguish between the Miche Bag handbags and Sierra's handbags before purchasing either handbag, the Court should look to any initial confusion caused before a consumer further investigates products for differences. *Promatek Ind. Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002). "Initial interest confusion, which is

actionable under the Lanham Act, occurs when a customer is lured to a product by the similarity of the mark, even if the customer realizes the true source of the goods before the sale is consummated.  *Id.*  Here, consumers may be initially confused by the similarity between the Miche Bag and Sierra's handbags before realizing that, due to the poor quality of Sierra's handbags, Sierra's handbags are not affiliated with Miche Bag.  Nevertheless, due to the lower price, consumers may choose to purchase Sierra's handbags.  This amounts to initial interest confusion, which warrants a finding of a likelihood of confusion and entrance of an injunction.

The Court should also consider the deleterious effects that knockoffs have in the post-sale market.  Even though the consumer may not be confused, "a loss occurs when a sophisticated buyer purchases a knockoff and passes it off to the public as the genuine article at a knockoff price."  *Hermes Int'l v. Lederer de Paris Fifth Ave.*, 219 F.3d 104, 109 (2d Cir. 2000).

### d)      The Miche Trade Dress is strong.

"Strength of the trade dress is demonstrated by 'extensive advertising, length of time in business, public recognition and uniqueness."  *Gucci Timepieces America Inc. v. Yidah Watch Co.*, 1998 U.S. Dist. LEXIS 15972, *15–16, 47 U.S.P.Q.2d 1938 (C.D. Cal. Aug. 4, 1998) (citing *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1179 (9th Cir. 1998)).  As discussed above in relation to secondary meaning, the Miche Trade Dress is distinctive, has been vigorously advertised and marketed through a variety of media and sales channels since 2007. *See L.A. Gear*, 988 F.2d at 1130 (secondary meaning in fashion item acquired after six months); *Custom Vehicles,* 476 F.3d at 485–86 (7th Cir. 2007) (a high volume of sales supports a finding of secondary meaning).  Thus, this factor weighs in favor of a likelihood of confusion.

### e)  Evidence of actual confusion is not required.

The moving party is not required to show actual confusion at the preliminary injunction stage.  *Computer Care*, 982 F.2d at 1070.  Thus, this factor is neutral.

### f)  Sierra's intended to benefit from the goodwill associated with the Miche Trade Dress

As described above, direct evidence of intent is not necessary because evidence of intent to benefit from the reputation and goodwill of another may be shown by circumstantial evidence. *See AmBRIT,* 805 F.2d at 986–87 (finding of intent based upon "substantial similarities"). "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 354 (9th Cir. 1979), *abrogated on other grounds by*, *Mattel Inc. v. Walking Mt. Prods.*, 353 F.3d 792 (9th Cir. 2003).

Sierra's handbags share substantial similarities with the Miche Trade Dress.  Sierra's handbags share several features with the Miche Trade Dress, all of which were unlikely to be developed and combined into a single product without prior knowledge of the Miche Trade Dress.  Moreover, Sierra's has copied Miche Bag's cover designs and graphical marketing.  Thus, based upon the substantial similarities between Sierra's handbags and the Miche Trade Dress, the Court should find that Sierra's intentionally copied Miche Bag's handbags with the purpose of deriving benefit from the goodwill and reputation associated with Miche Trade Dress.

Since, Sierra's intended to benefit from the goodwill associated with Miche Bag and the Miche Trade Dress, this factor weighs in favor of a finding of likelihood that consumers will confuse Sierra's handbags with the Miche Trade Dress.

There is a likelihood of confusion resulting from Sierra's infringement of the Miche Trade Dress.  Accordingly, Sierra's should be preliminarily enjoined from further infringement.

### 3.      The Miche Bag Trade Dress is not Functional

The Miche Trade Dress is not functional because handbag makers can design handbags that do not incorporate each and every distinctive element of the Miche Trade Dress. Sierra's has made no attempt to design their own handbag. Rather, Sierra's blatantly copied Miche Bag's handbags and the Miche Trade Dress.

"If products having the same utility can not be made without duplicating the design, the product design is deemed essential to the function and is not protectable." *L.A. Gear*, 988 F.2d at 1129. "[A] design feature of a particular article is 'essential' only if the feature is dictated by the functions to be performed; a feature that merely accommodates a useful function is not enough." *Id.* Additionally, "functional elements that are separately unprotectable can be protected together as part of a trade dress. *LeSportsac, Inc. v. K Mart Corp.*, 754 F.2d 71, 76 (2d Cir. 1985). "In other words, [the court's] inquiry is not addressed to whether individual elements of the trade dress fall within the definition of functional, but to whether the whole collection of elements taken together are functional." *Fuddruckers, Inc. v. Doc's B.R. Other, Inc.*, 826 F.2d 837, 841 (9th Cir. 1987) (citation omitted); *see also SK&F Co. v. Premo Pharm. Labs., Inc.*, 481 F. Supp. 1184, 1187 (D.N.J. 1979) ("[T]he law of unfair competition in respect to trade dress requires that all of the features be considered together, not separately."). Further, "functionality of trade dress must be proved by the party asserting the defense." *L.A. Gear*, 988 F.2d at 1129.

Many of the design features of the Miche Trade Dress reflect design choices that are not 'essential' to the function of a handbag. For example, the Miche Trade Dress includes various features described in detail above, each of which alone or in combination are not essential to a handbag. Even if some of the features of the Miche Trade Dress alone have some function, the

combination of all the features together is non-functional.  Thus, the Miche Trade Dress, as a whole, is non-functional and is therefore protectable.

### B.   Miche Bag Has no Adequate Remedy at Law

When determining whether a movant has an adequate remedy at law, the Court must not define inadequate to mean "wholly ineffectual; [rather] we mean seriously deficient as a remedy for the harm suffered."  *Crue*, 137 F.Supp.2d at 1090.  Loss of goodwill and the distinctiveness of trade dress "are by their very nature irreparable and not susceptible of adequate measurement for remedy at law."  *AM General*, 311 F.3d at 831–32 (citation omitted).

As described below, the sale of infringing Sierra's handbags will cause Miche Bag to lose goodwill that is associated with the Miche Trade Dress, lose market share, and lose control over its protected Miche Trade Dress.  Such effects "are by their very nature irreparable" and have to adequate remedy at law.  *See Am General*, 311 F.3d at 831–832.  Thus, Miche Bag is entitled to injunctive relief against Sierra's, including enjoining all Sierra's sales of infringing handbags.

### C.   Miche Bag is Likely to Suffer Irreparable Harm without the Requested Relief

#### 1.   Miche Bag is entitled to a presumption of irreparable harm .

In cases of trademark infringement, irreparable harm is generally presumed.  *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 469 (7th Cir. 2000); *see also Processed Plastic Co. v. Warner Communications, Inc.*, 675 F.2d 852, 858 (7th Cir. 1982) (holding that "damages occasioned by trademark infringement are by their very nature irreparable and not susceptible of adequate measurement for remedy at law").   "Protection of trade dresses, no less than of trademarks, serves the [Lanham] Act's purpose to secure to the owner of the mark the goodwill of his business and to protect the ability of consumers to distinguish among competing producers."  *Two Pesos,* 505 U.S. at 744.  Because Miche Bag has demonstrated a likelihood of confusion, Miche Bag is entitled to a presumption of irreparable harm.

### 2.      Miche Bag will be irreparably harmed through the price erosion.

Notwithstanding Miche Bag's presumption of irreparable harm, the evidence in this case nonetheless establishes that Miche Bag is being irreparably harmed by Sierra's continuing infringement.   The Federal Circuit has expressly recognized that price erosion is a form of irreparable harm that justifies a preliminary injunction. *See Polymer Tech., Inc. v. Bridwell,* 103 F.3d 970, 975–76 (Fed. Cir. 1996).

Miche Bag will be irreparably harmed by price erosion.   Sierra's products compete directly with Miche Bag's protected products.   The harm already inflicted by Sierra's is not limited to a single customer, nor is it limited in time.   Sierra's is currently selling its infringing handbags products at a lower price point than Miche Bag's products.   (Church Aff., ¶ 28.)   This enables distributors and retailers to sell Sierra's knockoff products at lower prices, while also increasing their profit margin.   (*Id.*, ¶ 29.)   This motivates distributors and retailers to purchase Sierra's lower-priced, infringing products rather than Miche Bag's handbags.   (*Id.*, ¶ 30.)   This forces Miche Bag to lower its price structure, thereby causing significant price erosion, from which Miche Bag will be unable to recover.   (*Id.*, ¶ 31.)   Once the price is pushed down by copyists like Sierra's, pre-existing price levels and market share are not recoverable.   (*Id.*)

### 3.      Miche Bag will be irreparably harmed through loss of market share.

Irreparable harm may be established by demonstrating a loss of market share. *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456 (Fed. Cir. 1988).   Miche Bag will also suffer immeasurable damages due to the loss of customers and market share unless Sierra's is enjoined from future sales of infringing handbags.   Miche Bag enjoys extensive market share and is very successful in the sale of its hand bag products.   (Church Aff., ¶¶ 14 & 17–18 .)   Various companies have attempted to copy Miche Bag's handbags in an effort to capitalize upon Miche Bag's success.   However, Miche Bag commits significant resources to enforcing its intellectual

property rights in order to keep such copyists out of the market.  Thus, presently, Miche Bag has no major, legitimate competitors in the bundled purse product market.  (*Id.*)  Therefore, if Sierra's is permitted to continue in its infringement of Miche Bag's intellectual property, Miche Bag will lose market share.  Such a loss is irreparable.

### 4.    Harm to Miche Bag's reputation is irreparable.

Monetary damages are not adequate to compensate for harm to reputation.  *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891, 903 (7th Cir. 2001) (irreparable injury is presumed because damages to reputation and good will cannot be adequately measured).  Although Sierra's infringing products look like Miche Bag's handbags, they are not in fact the same.  In copying the Miche Trade Dress, Sierra's did not pay close attention to the design details and quality.  Sierra's subpar manufacturing practices and quality concerns will sour the market for and cause irreparable loss of reputation to Miche Bag.

### 5.    Loss of Miche Bag's business opportunities through expansion of its world-wide network is irreparable.

Harm to Miche Bag's reputation and harm to its interest in Miche Bag's unique handbag will irreparably harm Miche Bag's worldwide network of distributors, representatives, and retailers.  Miche Bag depends upon the interest and excitement in its products in order to attract distributors and retailers.  (*Id.*, ¶¶ 21–24.)  Sierra's lower priced handbags, which are confusingly similar to Miche Bag's handbags, will irreparably diminish the interest and excitement in Miche Bag handbags among consumers and thereby injure Miche Bag's marketing network.  (*Id.*, ¶ 32–33.)  Therefore, in addition to the loss of Miche Bag's handbag sales, Sierra's infringement impairs Miche Bag's worldwide distribution network by hindering its ability to attract its consumers to opportunity to become distributors and home-party representatives.

### D.       The Balance of Hardships Favors Miche Bag

The balance of hardships in this case favors Miche Bag and the entry of a preliminary injunction.  "The court weighs the irreparable harm that the moving party would endure without protection of the preliminary injunction against any irreparable harm the nonmoving party would suffer if the court were to grant the requested relief."  *Girl Scouts of Manitou Council v. Girl Scouts of the United States of American, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008).

Miche Bag has invested extensive resources into the development and marketing of its distinctive line of handbags including the Miche Trade Dress.  (Church Aff., ¶¶ 7–13, 19.)  As shown above, Miche Bag will be irreparably harmed due to price erosion, loss of reputation, and loss of market share if Sierra's is allowed to continue its infringement of the Miche Trade Dress.

In contrast, Sierra did not invest substantial resources in developing their handbags.  Rather, Sierra's merely copied Miche Bag's handbags.  An injunction will, therefore, only stop Sierra's from making unlawful sales based on the Miche Trade Dress.  If enjoined from unlawfully selling infringing products, Sierra's can provide little compelling evidence that it will suffer any harm to its lawful business practices.  Thus, Sierra's is not likely to suffer any irreparable harm by the entry of a preliminary injunction.

Further, Miche Bag sole business is the sale of customizable handbags and accessories.  In contrast, Sierra's business before copying Miche Bag's products was the sale of customizable footwear.  (Belshe Aff., ¶ 5.)  Enjoining Sierra's will have no likely effect upon Sierra's legitimate business in selling customizable footwear.

### E.       The Requested Relief is in the Public's Interest

The issuance of a preliminary injunction will not adversely affect any public interest.  Rather, a preliminary injunction will serve a primary purpose of the Lanham Act: "to protect the

ability of customers to distinguish among competing producers." *Two Pesos*, 505 U.S. at 774. Trade dress "provide[s] a means for the public to distinguish between manufacturers, and also provide[s] manufacturers incentive to provide quality goods." *Hermes Int'l v. Lederer de Paris Fifth Ave., Inc.*, 219 F.3d 104, 108 (2d Cir. 2000) (citation omitted). Copyists attract customers who might otherwise purchase authentic goods thereby decreasing a trademark holder's return on investment in quality goods. *Id.* "This reduction in profits may cause trademark holders to decrease their investments in quality goods," in turn "harming those consumers who wish to purchase higher quality goods." *Id.* The public interest favors entrance of an injunction. Miche Bag is entitled to a temporary restraining order and preliminary injunction enjoining Sierra's from all sales of handbags that infringe the Miche Trade Dress.

## V.       CONCLUSION

In light of the foregoing, the Court should grant Plaintiff's Motion and preliminarily enjoin Sierra's infringement.

DATED this 7th day of May, 2010.

<div style="margin-left:auto">

S:/Steven L. Smilay/
Steven L. Smilay (26233-43)
BOTKIN & HALL, LLP
105 East Jefferson Blvd., Ste. 400
South Bend, Indiana 46601
Telephone: (574) 234-3900
ssmilay@bhlawyers.net

Attorneys for Plaintiff Miche Bag, LLC

</div>