IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| | ) | |
| MICHE BAG, LLC, | ) | |
| | ) | Case No.:  3:10-cv-00129-RLM-CAN |
| Plaintiff, | ) | |
| v. | ) | Judge Robert L Miller, Jr |
| | ) | |
| THE MARSHALL GROUP, INC. d/b/a | ) | Magistrate Judge: |
| SIERRA'S, | ) | Christopher A Nuechterlein |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

**I.      INTRODUCTION**

Defendant, The Marshall Group d/b/a Sierra's (hereinafter "TMG") respectfully requests

that this Court deny the Plaintiff Miche Bag, LLC's  (hereinafter "Miche") multiple requests for

temporary restraining orders.

At the outset, TMG believes that at a minimum, Miche is not entitled to a preliminary

injunction hearing without giving TMG a full opportunity to brief the myriad of complex issues

raised in Miche's moving papers.  While this Responsive Memorandum may lay out several

grounds for denying Miche's requests, TMG believes that a 60 day briefing schedule would

provide it with sufficient time to fully respond to all of the issues in Miche's various motions.

TMG has only had a few days to develop the present position based upon a cursory review of

Miche's requests for injunctive relief.  Indeed, while counsel for Miche began filing their

Motions on May 11, 2010 and despite having knowledge of the identity of TMG's counsel (*see*,

Docket No. 5, identifying TMG's counsel), counsel for Miche did not inform TMG's counsel of

1

the motions until the late afternoon/evening two days later.   Thus, TMG should be given an

appropriate amount of time to brief the merits of the request for preliminary injunction and it is

respectfully requested that this Court grant a briefing schedule on same.  Moreover, given

Miche's delay in seeking injunctive relief, TMG submits that Miche should not be opposed to

this request.

As will be explained in more detail herein, Miche is not entitled to any temporary

restraining orders because of its delay in seeking same.  Miche could have brought the request

for injunctive relief with its original Complaint, or even its Amended Complaint; yet, it did not.

Accordingly, TMG believes that a temporary restraining order is not warranted.

Turning to the merits of Miche's claims, TMG submits that:

Copyright – Miche is not likely to succeed on the merits because it cannot show access or striking similarity;

Trade Dress – Miche is not likely to succeed on the merits because it cannot show secondary meaning for the non-functional aspects of its alleged trade dress;

Design Patent Infringement- Miche is not likely to succeed on the merits and is not entitled to injunctive relief because they have not presented the Court with the proper analysis;

Utility Patent Infringement- Miche is not likely to succeed on the merits because even a cursory review of the prior art shows the only asserted patent claim is blatantly invalid; and,

Inadequate Remedy at Law/Irreparable harm – Miche has not demonstrated an irreparable harm or inadequate remedy at law.

Accordingly, TMG respectfully requests that this Court deny each and every one of

Miche's requests for a temporary retraining order.

**II.     MICHE IS NOT ENTITLED TO A TEMPORARY RESTRAINING ORDER BECAUSE ITS HAS DELAYED**

As noted above, Miche has delayed requesting the present temporary restraining orders and preliminary injunctions.  While delay is not determinative, it can demonstrate a lack of irreparable harm.  *See*, *e.g.*, *Reins of Life, Inc. v. Vanity Fair Corporation*, 5 F. Supp 2d 629, 632 (N.D. Ind. 1997).

Miche has known of TMG and its products since at least December 2009, yet it waited until May 11, 2010 to seek injunctive relief.  The attached time line references the various counts, Miche's knowledge, Miche's activities and their delay in seeking injunctive relief.  *See*, Exhibit A.  As can be seen, Miche has had knowledge of TMG's allegedly infringing activities since at least December 2009.  Indeed, they sent a cease and desist letter on December 15, 2009 to TMG.  *See*, Docket No. 32 ("Sierra's handbags and handbag covers infringe the '201 Patent, the Miche Design Patents, the Miche Trade Dress, and the Miche Copyrights. Thus, Miche Bag sent a cease-and-desist letter to Sierra's on December 15, 2009.").  However, Miche waited until May 11, 2010 to seek its first temporary restraining order.

This delay, at a minimum, supports this Court denying Miche's request for the temporary restraining orders.  *See*, *e.g*., *Roberts v. Atlantic Recording Corporation*, 892 F. Supp. 83 (S.D.N.Y. 1995) (denying TRO for copyright infringement where plaintiff knew of activities on March 7, 1995 but waited until May 17, 1995 to seek TRO); *see also*, *Century Time Ltd. v. H. Stern Jewelers, Inc.*, 729 F. Supp. 366 (S.D.N.Y. 1990) (denying TRO where plaintiff waited two months from the time they knew the matter was not going to be settled and requested a TRO for trade dress infringement); *see also*, *The Media Group, Inc., v. Ontel Products Corp*., 2001 U.S. Dist. LEXIS 1993 (D. Conn. 2001)(court denying preliminary injunction based upon 6 month delay between filing suit and requesting injunctive relief).

Indeed, had the situation been one that truly required emergency relief, Miche would have moved for injunctive relief much, much sooner.  However, it did not, and, accordingly, this Court should deny their request for the temporary restraining orders.

Moreover, not only has Miche delayed in seeking injunctive relief in the present action, in other actions alleging trade dress, design patent, and copyright infringement claims, Miche has either never filed for injunctive relief, or similarly waited to seek injunctive relief.  *See*, Exhibit B.

Miche should not be able to claim irreparable damage when its actions have suggested otherwise.  At the very least, Miche should not be able to obtain a temporary restraining order and/or rely upon the presumed irreparable harm in view of its delay.

While TMG submits that this basis alone is enough to deny Miche's request for a temporary restraining order, should the Court decide to approach the merits of Miche's claim, TMG submits that the remaining arguments, which are based only on a cursory review of Miche's submissions supporting its claims, should be considered.  TMG reserves the right to amend and supplement this brief with respect to the merits of Miche's claim once it has had a full opportunity to review and respond to the positions contained therein.

## III.   PRELIMINARY INJUNCTION/TEMPORARY RESTRAINING STANDARD

A party seeking a preliminary injunction must demonstrate:

(1)   likelihood of prevailing on the merits,

(2)   an inadequate remedy at law; and,

(3)   irreparable harm if preliminary relief is denied.

*See, e.g.*, *Reins of Life, Inc. v. Vanity Fair Corporation*, 5 F. Supp. 2d 629, 631 (N.D. Ind. 1997).

If the party seeking the preliminary injunction meets that burden, the Court must decide whether the irreparable harm that party would suffer if injunctive relief were denied outweighs any irreparable harm that the non-moving party would suffer if injunctive relief were granted, and further decide whether the public interest--the injunction's effect on non-parties--favors the injunction. *Id*. citing to *TMT North America, Inc. v. Magic Touch GmbH,* 124 F.3d 876, 1997 WL 549546, at *3 (7th Cir. 1997).

As will be shown in more detail herein below, Miche cannot demonstrate these three factors for each of its claims, and accordingly, this Court should deny its request.

## IV.     LIKELIHOOD OF SUCCESS ON THE MERITS

As noted above, Miche must demonstrate a likelihood of success on the merits for each of its causes of action.  However, as will be explained in more detail below, Miche cannot meet this burden for any of its four claims.

### A.     COPYRIGHT

#### 1.     Access and Substantial Similarity

In order to establish access, an essential element for its copyright infringement claim, Miche relies upon general allegations that its products are widely available. Docket No. 32, page 23.  However, such "wide dissemination" is *nowhere* tied to the specific designs that are the subject of its copyright infringement claims, VA 1-685-132 and VA 1-652-763.  Indeed, one of the registrations (VA 1-685-132) states that the first publication was only July 9, 2009.  *See*, Docket No. 32-8.  Thus, there is no specific evidence that these two specific purses were widely disseminated.

Moreover, Miche relies upon a case where the plaintiff had demonstrated that it had widely disseminated its products in many large department stores.  *Monya, LLC v. Victoria's*

*Secrets Direct New York, LLC*, 2003 U.S. Dist. LEXIS 14417, *12; 67 U.S.P.Q.2D (BNA) 174, (S.D.N.Y. 2003) ("MOYNA handbags bearing the Pinwheel Design were widely disseminated and available at a New York accessories show, stores including Bergdorf Goodman, Barney's, Saks Fifth Avenue, Macy's and other specialty boutiques in New York as well as throughout the United States and Overseas.")  Miche, on the other hand, has not shown that it has widely disseminated its products to such large department stores.  *See*, Docket No. 20-1, ¶20. Rather, Miche explains that its "primary source of sales" is "home parties."  Docket No. 32 page 3. These "home parties" are not the same as the large department stores at issue in *Moyna*. Accordingly, Miche's argument that access can be inferred based upon the "wide dissemination" of these two hand bags must fail.

Miche also attempts to show access via the alleged substantial similarity between the two copyrighted designs and two of TMG's product.  Docekt No. 32 page 24.  Miche's conclusion is essentially based upon the false premise that its copyrights are for purses with giraffe print and red trim.  These are the only similarities between the purses.  As can be seen in the side by side presentation, there are significant design differences between TMG's purses and the purses covered by Miche's copyrights.

For example, with respect to VA 1-652-763 and TMG's SW 102 Giraffe purse, TMG's purse has red trim on the top of the purse, while Miche's is on the bottom.  TMG's red trim is a straight piece; Miche's is not straight, but has a cut out portion.  Moreover, TMG's red trim is textured and has bumps throughout.  Miche's red trim is smooth and does not contain bumps. Moreover, the shape of the straps of TMG's purse is different than Miche's purse.

With respect to VA 1-685-132, first TMG notes that the picture Miche presents in its side by side comparison is not one of the two photographs attached to the Registration submitted to

6

the Court.  *See*, Docket No. 9, 9-2, pages 5-7; compare with Docket No. 32 page 24.  This is

significant because TMG's SB 301 Red Giraffe purse includes red trim on the top of the purse

flaps that does not continue on the inside of the flaps.  While Miche's bag contains red trim on

both sides of the top flaps.  *See*, Docket No. 9, 9-2, pages 5-7.  Notably, TMG's purse does not

contain any red trim on the bottom of the front of the bag; Miche's purse does.  Again, the red

trim is different material in both purses.  Further, Miche's side strap attachments are a black

material; TMG's purse uses the same red trim.  TMG's bag is smooth.  Miche's bag has excess

fabric on the front creating a "pleated effect."  Moreover, TMG's purse includes red trim on the

borders of the purse.  Miche's bag does not contain such trim.  These significant differences

between the purses covered by the copyright registrations and TMG's purses, when all viewed

together, preclude a finding of striking similarity.

Since Miche "does not have direct evidence of access, then an inference of access may

still be established circumstantially by proof of *similarity* which is *so striking that the*

*possibilities of independent creation, coincidence and prior common source are, as a practical*

*matter precluded.*"  *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) (emphasis added).  The

purses are not strikingly similar so as to preclude the possibility that they were independently

created.  This is especially true because the only major similarity between the purses, the giraffe

pattern, is based upon a pattern found in nature.  Moreover such a purse appears readily available

in the market place.  *See*, Exhibit C.  The only similarity between the purses, giraffe pattern with

red trim, appears to be a common purse design throughout the industry.  Thus, the alleged

similarities are not enough to create a striking similarity so as to preclude a possibility of

independent creation.

Accordingly, Miche is not likely to succeed on proving access (or striking similarity), and it is not entitled to either a temporary restraining order, or a preliminary injunction, for its copyright infringement claim.

**B.      TRADE DRESS**

Miche's asserted trade dress claim is nothing more than a poorly veiled attempt to expand patent protection to preclude TMG from selling purses.  Removing the clearly functional aspects from Miche's "trade dress" for the two styles of purses clearly shows that Miche is not likely to prove secondary meaning for its alleged trade dress.

1.      Functionality.

Miche bears the burden of proving that its trade dress is not functional.  *Wal-Mart Stores, Inc. v. Samara Bros*., 529 U.S. 205, 209 (2000).  It is undeniable that certain portions of the alleged trade dress are functional, as they are protected by a utility patent, or they are the subject of a pending patent application.  These same functional features are the ones that Miche asserts that are the basis of its trade dress protection.  "A utility patent is ***strong evidence*** that the features therein claimed are functional."  *Traffix Devices v. Mktg. Displays*, 532 U.S. 23, 29 (2001) (emphasis added).  Moreover, "[i]f trade dress protection is sought for those features the strong evidence  of functionality based on the previous patent adds great weight to the statutory presumption that features are deemed functional until proved otherwise by the party seeking trade dress protection."  *Id*. at 29-30.

With respect to the both styles of purses, Miche has asserted that a portion of the trade dress is the "removable covers."  *See*, Docket No. 32, page 2.  This is the exact functionality that is protected by the asserted utility patent, U.S. Pat. No. 6,186,201.  *See*, Docket No. 32-3, claim 1.  After removing this from Miche's trade dress claim (because it is undeniably functional),

Miche's remaining alleged trade dress claim for its large purses is, at most, for a purse that has flexible straps,[1] chrome round buckles and a two tone appearance.  *See*, Docket No. 32, page 2. Miche is clearly not the originator of such a purse and will never be able to establish secondary meaning for such a purse.[2]  Therefore, Miche is not likely to succeed with respect to a claim of trade dress infringement with respect to the large purses.

Turning to the small purse, Miche fails to inform this Court that they are currently prosecuting at least one utility patent directed to the functional side wraps allowing a consumer to switch covers.  *See*, *e.g.,* U.S. Pat. Appl. Pub. No.  2008/0230158 (Appl. No. 11/945,174), Exhibit D herewith.  Again, this feature is clearly functional--as Miche is currently attempting to obtain protection for this aspect.  *Id*.  After removing this undeniably functional aspect from Miche's excessively broad trade dress description, Miche's alleged trade dress for its small purses is again, at most, for a purse with a slightly upper curved portion, curved straps, chrome oval buckles, a rigid polygonal shape, inset sides, trapezoidal shaped zipper ends, and a two tone appearance.  *See*, Docket No. 32, page 2.  This description describes purses that most certainly have been around prior to 2007 (when Miche first began selling its products).  Moreover, it describes purses that are not associated with Miche.  Again, Miche is clearly not the originator of such a purse and is highly unlikely to succeed with respect to this claim of trade dress infringement.

Miche argues that its trade dress features are not functional because handbag designers can design around its trade dress claim.  Docket No. 32 page 21.  While such may be an argument for aesthetic functionality, "[w]here the design is functional under the *Inwood*

---

[1] Miche does not explain what makes its straps "unique."
[2] Trade dress which has acquired distinctiveness serves to identify its manufacturer or source.  *Traffix*, 532 U.S. at 28.  After removing the "essential" element of the trade dress from Miche's alleged trade dress claim, Miche does not show that the generic deception that is left is used to identify Miche as the source.

formulation there is no need to proceed further to consider if there is a competitive necessity for

the feature." *Traffix Devices 532 U.S.* at 33.  In *Traffix Devices*, the Supreme Court found that

because the "essential element" of the trade dress claims was also the subject of a utility patent,

the trade dress was functional, and it was unnecessary to inquire as to the availability of

alternatives to other manufactures.  *Id*.  In the present case, Miche undeniably submits that the

removable covers are the essential feature of its purses.  *See*, *e.g*., Docket No. 32 page 1 ("Miche

Bag sells a line of designer handbags that enable the user to change the look of the

handbag by simply changing the outer cover."); Docket No. 32-1 ¶5 (The unique design of the

Miche Bag products allows the user to change the look of the bag by changing the outer cover of

the shell."); Docket No. 32-2 page 5 ("Accordingly, we demand you to cease and desist

immediately from any further sale of hangbags with detachable covers.").  Thus, like the plaintiff

in *Traffix*, Miche is not entitled to include the functionality of the removable covers in its trade

dress claim.  Without this, Miche is not likely to show infringement of trade dress, because the

remaining generic description of a purse, simply cannot serve as a source identifier for purses

that have only been around since 2007.

Furthermore, Miche is not likely to succeed on its claims for trade dress infringement

because it simply cannot demonstrate secondary meaning with respect to the non-functional

aspects of its trade dress.  Accordingly, neither a temporary restraining order nor a preliminary

injunction is warranted.


2.      Secondary Meaning.

In addition to the above failure with respect to functionality, Miche has not presented

sufficient evidence establishing secondary meaning with respect its trade dress.

a.       Consumer Testimony

Miche presents no evidence of consumer testimony regarding secondary meaning.  While

Miche suggests this is a "neutral" factor, "the absence of that evidence weighs against [Miche]."

*Platinum Home Mortg. Corp. v. Platinum Fin. Group*, 149 F.3d 722, 728 (7th Cir. 1998)

b.       Exclusivity, Time And Manner Of Use

Miche states that it has been selling its purses since 2007, and this is enough time to

acquire secondary meaning.  Docket No. 32, page 15.  However, "length of time by itself is not a

determinative factor."  *See*, *Id*. at 728.  Moreover, given the crowded nature of the purse

industry, and without any specific allegations of how the marketing has created a secondary

meaning based upon the trade dress, this factor simply does not support that Miche will be likely

to prove secondary meaning.

Furthermore, Miche's website explains that the large purse has only been available since

September/October of 2009.  Exhibit I, page 12.

Given the fact that Miche is not entitled to the protection of its functional aspects of its

trade dress, Miche cannot establish that it is the only purveyor of purses with the remaining

elements.  Less than three years (or in the case of the large purses, less than one year) in such a

crowded field with such a generic trade dress claim cannot, without more, support a claim for

secondary meaning.

c.       Amount And Manner Of Marketing

Miche supports its claim of secondary meaning with a broad allegation of expending

considerable money and effort to market its products.  Docket No. 11-1, ¶ 19.  However, no

specific amounts or efforts are detailed.  Moreover, Miche cites its marketing on mass media

outlets, yet such a claim is unsupported in the "several local morning news programs" actually

described.  *See*, *Id.*, ¶ 20; *see also*, Docket No 32 page 16.  Again, there is little to no evidence supporting the claim of secondary meaning.

    d.  Amount Of Sales

  While Miche's sales appear to be large, Miche provides no evidence of how their sales relate to the purse industry in general.  Moreover, Miche does not specify if these amounts are for which styles of purses (the large purses, small purses, or both).  Similarly, the "primary source" of these sales is home parties.  *See*, *supra*.  Accordingly, this general statement without more should not support a basis of secondary meaning.

    e.  Established Place In The Market

  Miche claims to be dominant in the market place and the first to introduce its unique bags.  First, as can be seen in the numerous pieces of prior art cited during the prosecution of Miche's design patents, the utility patent asserted in the present case, and the utility patent application that Miche is currently prosecuting, it is clear that Miche is not the innovator of a purse with removable covers.  *See*, *e.g.,* Exhibit E.

  Second, removing the functional claim from Miche's trade dress, Miche cannot claim to be the first seller of such a purse, or a dominant player in the market with such a generic description of a purse.

    f.  Proof Of Intentional Copying

  Miche claims that TMG's purses are substantially similar.  However, this is based upon the false premise that Miche is entitled to trade dress protection for its functional aspects.

  Based upon the above, TMG submits that Miche is not likely to succeed with respect to showing a secondary meaning for its protectable trade dress.

## C.    DESIGN PATENT

For its claim of design patent infringement, Miche presents an inaccurate statement of the recently changed law for determining infringement of a design patent.

While Miche is correct that the Federal Circuit recently removed the "point of novelty" test from the design patent infringement analysis, the prior art is still relevant to and must be considered in determining infringement.  Indeed, as recently stated by the Federal Circuit,

> In determining whether an accused product infringes a patented design, this court applies the "ordinary observer" test, without any "point of novelty" perspective. *Egyptian Goddess*, 543 F.3d at 678. To show infringement under the proper test, an ordinary observer*, **familiar with the prior art designs***, would be deceived into believing that the accused product is the same as the patented design.  *See id*. at 681. When the differences between the claimed and accused designs ***are viewed in light of the prior art***, the attention of the hypothetical ordinary observer may be drawn to those aspects of the claimed design that differ from the prior art.

*Crocs, Inc. v. International Trade Commission*, 598 F.3d 1294, 1303 (Fed. Cir. 2010) quoting

*Egyptian Goddess, Inc. v. Swisa, Inc*., 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc) (emphasis added).

Thus, the prior art is relevant and must be consulted to determine if there is design patent infringement.   The Federal Circuit also explained the importance of the prior art, stating

> ***If the claimed design is close to the prior art designs***, small differences between the accused design and the claimed design assume more importance to the eye of the hypothetical ordinary observer. *Id*. The ordinary observer, however, will likely attach importance to those differences depending on the overall effect of those differences on the design.

*Id*.  (emphasis added).

Miche has not presented the Court with any of the voluminous pieces of prior art that were cited against its design patents.  This is not surprising given the striking similarity that exists between certain pieces of prior art and Miche's design patents.  *See*, *e.g*., U.S. Pat. Nos. 2,809,685, 3,182,701, 6,129,126, D495,877, 5,533,558, D476,809, D444,943 and U.S. Pat. Pub.

No. 2008/0185082, collectively Exhibit E, herewith.  These pieces of prior art are merely a

sampling of the prior art designs that are strikingly similar to Miche's asserted design patents.

Since Miche has not properly presented this Court with a correct and compete design

patent infringement analysis, Miche is not entitled to a temporary restraining order, or

preliminary injunction, because it has not shown that it is likely to succeed on the merits.

**D.      UTILITY PATENT**

With respect to infringement of U.S. Pat. No. 6,186,201 (the '210 patent), TMG submits

that Miche is not likely to succeed on the merits because even a cursory review of prior art shows

that claim 8 of the '201 patent is invalid.

A patent claim is invalid as anticipated under 35 U.S.C. § 102(a) if a single prior art

reference discloses each and every limitation of the claim. *Kloster Speedsteel AB v. Crucible*

*Inc.*, 793 F.2d 1565, 1571, 230 U.S.P.Q. (BNA) 81, 84 (Fed. Cir. 1986).  As can be seen in the

attached table, at least one piece of prior art clearly invalidates at least claim 8 of the '201 patent.

*See*, Exhibit F.  Claim 8 is the only claim identified in Miche's moving papers (Docket No. 32

page 8); however, TMG submits that other claims are likewise invalid.

U.S. Pat. No. 6,179,025 (Exhibit G, herewith) is prior art to the '201 patent under 35

U.S.C. § 102 (e).  *See also*, MPEP § 706.02(f)(1).  As can be seen in the attached comparison of

the '201 patent claim 8 and the disclosure of the '025 patent, each and every limitation of claim 8

is undeniably shown in the '025 patent.  *See*, Exhibit F; *see also* Exhibit G.

Accordingly, TMG submits that Miche is not likely to succeed on the merits of its utility

patent infringement claim.

## V.       INADEQUATE REMEDY AT LAW/IRREPARABLE HARM

Miche combines the inadequate remedy at law and the irreparable harm portions of its

analysis.  *See*, Docket No. 36 page 26.  It focuses on the presumed irreparable harm, price

erosion, loss of market share, loss of distributors, loss of good will/reputation.  TMG submits

that Miche has not met its burden to show irreparable harm, or an inadequate remedy at law.

### A.       DELAY

As noted above, Miche has delayed requesting the present temporary restraining orders

and preliminary injunctions.   Miche should not be able to claim irreparable damage when its

actions suggest otherwise.

### B.       PRICE EROSION

Miche asserts that there may be price erosion by the competition between Miche and

TMG.  However, this is not supported by any specific evidence showing that TMG's products

are priced lower than Miche.  In fact, TMG submits that the evidence shows that TMG's

products are not necessarily priced lower.

For example, according to its website, Miche offers its LEXI bag for $39.95.  Exhibit H.

Miche's attorney bought a comparable bag for $41.95.  Docket No. 32-2 page 21.  Thus, there is

evidence that TMG's products are sold at a higher rate, undercutting Miche's blanket claim that

there is price erosion.

### C.       LOSS OF MARKET SHARE/GOOD WILL

Miche asserts that it had $27 million dollars in sales in 2009 and that it expects in excess

of $50 million dollars of sales in 2010.  However, it also claims that allowing TMG to sell its

products will result in a loss of market share, or a lessening of good will.  Thus, at the same time

it claims a loss of good will/market share, Miche expects its sales to double.  Again, the evidence does not support Miche's claim.

## VI.    BALANCE OF HARDSHIPS

Finally, TMG submits that even if the Court finds Miche has proven the remaining elements, the balance of hardships tips in favor of TMG.  TMG has expended substantial resources in purchasing purses that are the subject of the present suit and in advertising expenses associated with same.  While the purses are only a portion of TMG's business, precluding it from selling the purses, especially given the weakness of Miche's positions, will hamper TMG's attempts to allow its business to grow.  Indeed, TMG employs a few people in its Sierra's division and enjoining it from selling purses as Miche requests would have a significant impact in TMG's Elkhart facility.  Accordingly, TMG submits that the balance of hardships weighs in its favor.

## VII.   CONCLUSION

In view of the above, TMG respectfully requests that the Court deny each and every one of Miche's requests for temporary restraining orders.

Dated:  May 20, 2010                                    Respectfully submitted,

  S:/Jody L. Factor/
Jody L. Factor (PHV)
Patrick J. Smith (PHV)
FACTOR & LAKE, LTD.
1327 W. Washington Blvd., Suite 5G/H
Chicago, Illinois 60607
Telephone:  312-226-1818
Facsimile:   312-226-1919
jfactor@factor-lake.com
psmith@factor-lake.com

Attorneys for Defendant, The Marshall
Group, LLC.

16

## CERTIFICATE OF SERVICE

I, Jody L. Factor, hereby certify that on this 20th day of May, 2010, I electronically filed the foregoing document, entitled **DEFENDANT'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION,** with the Court using the CM/ECF system, which will send notification of such filing to the following:

*Attorneys for Plaintiff Miche Bag, LLC*
Steve L. Smilay
BOTKIN & HALL, LLP
105 East Jefferson Blvd., Ste. 400
South Bend, Indiana 4660 I
Telephone: (574) 234-3900
Fax: (574) 236-2839
ssmilay@bhlawyers.net

I hereby certify that I have served via electronic mail and first class mail by United States Postal Service the document to the following non CM/ECF participant:

*Attorneys for Plaintiff Miche Bag, LLC*
James T. Burton
James B. Belshe
WORKMAN NYDEGGER
1000 Eagle Gate Tower
60 East South Temple
Salt Lake City, Utah 84111

S:/Jody L. Factor/
Jody L. Factor (PHV)
Patrick J. Smith (PHV)
FACTOR & LAKE, LTD.
1327 W. Washington Blvd., Suite 5G/H
Chicago, Illinois 60607
Telephone:  312-226-1818
Facsimile:   312-226-1919
jfactor@factor-lake.com
psmith@factor-lake.com

Attorneys for Defendant, The Marshall Group, LLC.